UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

JAMES GILLER,

         Plaintiff/Petitioner,          11 Civ. 02456 (JGK)

         - against -              <u>MEMORANDUM OPINION</u>
                                    <u>AND ORDER</u>

ORACLE USA, INC.,

         Defendant/Respondent.
————————————————————————————

JOHN G. KOELTL, District Judge:

     The plaintiff/petitioner, James Giller, brought this petition to confirm in part and vacate in part an arbitration award that resolved an employment dispute between Giller and his former employer, the defendant/respondent, Oracle USA.  Oracle now moves pursuant to Federal Rule of Civil Procedure 12(b)(6)to dismiss the claims in the petition that seek to vacate the parts of the award that were favorable to Oracle.  The Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332.

I.

     In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the Complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir.

2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the Complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the Complaint is inapplicable to legal conclusions."  Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the Complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2000); see also City of Roseville Emps.' Ret. Sys. v. Energysolutions, Inc., No. 09 Civ. 8633, 2011 WL 4527328 at *1-2 (S.D.N.Y. Sept. 30, 2011).

## II.

The following allegations are assumed to be true for the purposes of this motion unless otherwise stated.

Giller worked as Consulting Sales Manager for Oracle between February 2005 and April 2008. (Pet. to Confirm in Part & Vacate in Part the Arb. Award ¶ 1; Pet. Ex. A ("Award"), at 2.) Giller worked on a long-term master technology agreement between Oracle and the City University of New York ("CUNY") that closed on May 31, 2007. (Award, at 3-4.) Although the parties expected that the agreement eventually would involve $135 million of sales for Oracle, this was merely a projection of the contract's potential value. (Award, at 3-4; Pet. ¶ 9.) CUNY, as a public institution, could not sign a contract that bound it for longer than one year. (Pet. ¶ 9.) The $135 million represents the projected value of CUNY's expected purchases over five or six years. (Award, at 4; Pet. ¶ 9.) In 2007, CUNY purchased $20 million worth of services from Oracle. (Award, at 4; Pet. ¶ 9.) Although both Oracle and CUNY expected that CUNY would sign purchase orders in each of the following four or five years, CUNY was not obligated to do so and there was no such guarantee. (Award, at 4; Pet. ¶ 9.)

As a Consulting Sales Manager, Giller received commissions for sales that he booked at a rate determined annually by

Oracle.  (Award, at 4; Pet. ¶ 6; Decl. of Gary M. Meyers in Opp. to Mot. to Dismiss Pet. ("Meyers Decl.") Ex. 2A ("Compensation Plan"), at 3-20.)  Giller received commissions from the 2007 CUNY transaction based not on the $135 million that included all expected future sales, but on $18 million of the initial $20 million purchase.  (Award, at 4.)  After the close of its 2007 fiscal year, Oracle placed a retroactive cap on the amount of money Giller could receive as payment for commissions for that year.  (Award, at 7-9, 12; Pet. ¶ 10.)

For the year following Giller's booking of the CUNY transaction, Oracle significantly increased Giller's sales target, which resulted in a decrease in his commission rate. (Award, at 15-16.)  Oracle also reduced Giller's sales territory.  (Pet. ¶ 20.)  Giller also alleges that his managers treated him poorly, that Oracle wished to "manage him out of the company," and that Giller was not a part of their long range plans.  (Pet. ¶¶ 22-25.)  Giller resigned from Oracle in April 2008.  (Pet. ¶ 25.)

Giller's employment relationship with Oracle was governed by a broad Employment Agreement and Mutual Agreement to Arbitrate.  (Decl. of Christopher J. Collins in Supp. of Mot. to Dismiss Ex. 2 ("Agreement").)  That Agreement, which is dated January 16, 2005, provides:

> You and Oracle understand and agree that any existing
> or future dispute or claim arising out of or related
> to your Oracle employment, or the termination of that
> employment, will be resolved by final and binding
> arbitration and that no other forum for dispute
> resolution will be available to either party, except
> as to those claims identified below. The decision of
> the arbitrator shall be final and binding on both you
> and Oracle and it shall be enforceable by any court
> having proper jurisdiction.

(Agreement.)  None of the exceptions to arbitration applied, and
Giller submitted his employment dispute to an arbitrator in an
Employment Arbitration Tribunal of the American Arbitration
Association as provided for in the Agreement.

Giller filed three claims against Oracle in the
arbitration.  (Meyers Decl. Ex. 2 ("Stmt. of Claim") ¶¶ 17-31.)
The first claim for fraudulent inducement was dismissed by the
arbitrator on summary judgment and is not at issue here.
(Award, at 1.)  Giller's second claim sought to recover
commission payments on the entirety of the potential $135
million purchase order with CUNY.  (Stmt. of Claim ¶¶ 22-26.)
Giller claimed that the failure to pay him a commission on the
entire amount of $135 million was a breach of contract or a
breach of the implied covenant of good faith and fair dealing.
(Statement of Claim ¶¶ 22-26.)  Giller's third claim sought to
recover for discrimination on the basis of age.  (Statement of
Claim ¶¶ 27-31.)  Giller argued that the increased sales target
and resulting decreased rate of commission, and other actions

undertaken by Oracle created an intolerable work atmosphere that amounted to constructive discharge.  (Statement of Claim ¶¶ 9-15.)  Giller alleged that this adverse employment action was motivated by discrimination on the basis of his age.  (Statement of Claim ¶¶ 27-31.)

In a thorough decision, following a three day evidentiary hearing, the arbitrator found that the retroactive cap placed on Giller's commissions constituted a breach of contract and awarded him $99,355.  (Award, at 12-13.)  However, the arbitrator found in favor of Oracle on the remainder of Giller's contract claim, including Oracle's determination that Giller was not entitled to receive a commission for the higher, projected amount of the CUNY transaction until Oracle actually "booked" a CUNY payment for that amount.  (Award, at 12.)  The arbitrator found that Oracle's Compensation Plan entitles Consulting Sales Managers to receive commissions when the client executes a purchase order and that Oracle does not pay commissions for future or expected purchases.  (Award, at 13.)  While the arbitrator agreed that Oracle breached its contract with Giller by retroactively reducing the commission he actually earned for 2007, the arbitrator found that the Compensation Plan between the parties allowed Oracle to change an employee's sales target and commission rate before and during a given fiscal year. (Award, at 12, 15-18.)

The arbitrator also found the evidence insufficient to establish that Giller experienced either an adverse employment action or discrimination on the basis of age.  (Award, at 21-22.)  The arbitrator found that Giller's work environment was not "so intolerable that a reasonable person in his circumstances would be compelled to resign."  (Award, at 21.)  The arbitrator also found "no persuasive evidence in the record to demonstrate that the actions [Oracle] took against [Giller] were the result of discrimination on the basis of age."  (Award, at 22.)

Giller filed suit in this Court seeking to vacate the arbitration award with respect to the arbitrator's findings on the amount of commissions owed to him and on his age discrimination claim, and confirming the portion of the award that awarded him $99,355.

### III.

The task for a party seeking to vacate an arbitration award is a formidable one.  The party challenging an arbitration award generally bears a heavy burden of proof, and courts generally will conduct only limited review of arbitration decisions.  See, e.g., Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp., 103 F.3d 9, 12 (2d Cir. 1997) ("Arbitration awards are

subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."(alterations omitted)); In re Arbitration Between Space Sys./Loral, Inc. v. Yuzhnoye Design Office, 164 F. Supp. 2d 397, 403 (S.D.N.Y. 2001) ("[L]imited review of arbitration decisions is necessary both to effectuate the parties' agreement to submit their disputes to arbitration and to avoid costly and protracted litigation about issues the arbitrators have already decided."); see also Hamilton v. Sirius Satellite Radio, Inc., 375 F. Supp. 2d 269, 273 (S.D.N.Y. 2005).

The parties acknowledge that the arbitration agreement in this case is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq., (the "FAA").  The FAA authorizes a district court to vacate an arbitration award on four statutory grounds, including "where there was evident partiality or corruption in the arbitrators . . . [or] where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(2);(4); see also Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 90-94 (2d Cir. 2008) rev'd on other grounds, 130 S.Ct. 1758 (2010).

An arbitration award also may be vacated if it constitutes "manifest disregard" of the law.  Telenor Mobile Commc'ns AS v.

Storm LLC, 584 F.3d 396, 407 (2d Cir. 2009); Stolt-Nielsen, 548 F.3d at 91-94.  The Court of Appeals for the Second Circuit has explained that the "manifest disregard" doctrine can be "reconceptualized as a judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA."  Stolt-Nielsen, 548 F.3d at 94.[1]  The Court of Appeals has repeatedly emphasized that review of an arbitration award for manifest disregard of the law is "severely limited," and "to modify or vacate an award on this ground, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case."  Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 202 (2d Cir. 1998) (internal quotations omitted); see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389-91 (2d Cir. 2003); Hamilton, 375 F. Supp. 2d at 273 (S.D.N.Y. 2005).

Review under the doctrine of manifest disregard of the law is not an inquiry into the correctness of the decision, and the "erroneous application of rules of law is not a ground for vacating an arbitrator's award, nor is the fact that an arbitrator erroneously decided the facts."  Siegel v. Titan

---

[1] The Supreme Court has left open the question whether "manifest disregard" survives as an independent ground for judicial review or as a judicial gloss on the enumerated grounds for vacatur in 9 U.S.C. § 10.  Stolt-Nielsen, 130 S.Ct. at 1768 n.3.

Indus. Corp., 779 F.2d 891, 892-93 (2d Cir. 1985) (citations omitted); see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933-34 (2d Cir. 1986)(explaining that a court is "not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it"). Instead, the error must be "plainly evident from the arbitration record," Duferco, 333 F.3d at 388, such that it is "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator," Bobker, 808 F.2d at 933; see also Hamilton, 375 F. Supp. 2d at 273-74 (S.D.N.Y. 2005).

The arbitration decision must be confirmed if there is "even a barely colorable justification for the outcome reached." In re Arbitration Between Andros Compania Maritima and Marc Rich & Co., A.G., 579 F.2d 691, 703-04 (2d Cir. 1978). Vacating an award for manifest disregard of the law is appropriate "only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." Stolt-Nielsen, 548 F.3d at 91-92 (internal quotation marks omitted); see also Hamilton, 375 F. Supp. 2d at 274. Moreover, the Court of Appeals has made it clear that it does not "recognize manifest disregard of the evidence as a proper ground for vacating an arbitration award." Stolt-Nielsen, 548 F.3d at 91.

Accordingly, between 1960 and the Duferco decision in 2003,

the Court of Appeals for the Second Circuit has vacated some or all of an arbitral award for manifest disregard of the law in only four of at least forty-eight cases. Duferco, 333 F.3d at 389. This is because interference with arbitration awards would "thwart the usefulness or arbitration, making it the commencement, not the end, of litigation." Id. (internal quotation marks omitted); see Wallace v. Buttar, 378 F.3d 182, 191 (2d Cir. 2004) (describing the "sobering odds" of prevailing on a manifest disregard argument).[2]

## IV.

### A.

Giller seeks to vacate the portion of the arbitration award denying his age discrimination claim on the basis that it evidences a manifest disregard of the law. Giller claims he suffered an adverse employment action, motivated by discrimination on the basis of age. (Award, at 18.) The adverse employment action alleged by Giller was constructive discharge. (Award, at 18.)

Here, the Petition fails to plead facts sufficient to state a claim for vacatur under the manifest disregard standard. Despite Giller's allegations, the Petition identifies no legal

---

[2] In Stolt-Nielsen, the Court of Appeals updated the statistics. It noted that since Duferco, the Court of Appeals has vacated one award, and remanded two others for clarification, while declining to do either in fifteen cases. Stolt-Nielsen, 548 F.3d at 91-92 n.7.

standard that the arbitrator failed to apply.  The arbitrator plainly applied the correct legal standard to determine whether Giller had been subjected to a constructive discharge.  See, e.g., Pa. State Police v. Suders, 542 U.S. 129, 147 (2004) ("A plaintiff who advances [a constructive discharge] claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign.").  The Petition instead argues that the arbitrator erred in applying the standard for constructive discharge to her findings of fact.  (Pet. ¶¶ 26-29.)  However, this is simply a challenge to the arbitrator's findings of fact, which is not a basis to vacate the award.  The arbitrator, after considering the credibility of the witnesses, concluded that Giller had failed to establish the necessary elements for a claim of constructive discharge or indeed a claim that he was the victim of age discrimination.  Far from being conclusions that were in manifest disregard of the law, the conclusions were reasonable conclusions from the factual record. Therefore, Oracle's motion to dismiss Giller's petition to vacate the denial of his age discrimination claim is **granted**.

### B.

Giller next alleges that the arbitrator manifestly disregarded clearly applicable principles of contract interpretation that resulted in an incorrect construction of the parties' Compensation Plan.  (Pet. ¶ 30.)  The Petition alleges

that the arbitrator knew of and intentionally disregarded the rules of contract interpretation established by the New York Court of Appeals by consulting extrinsic evidence to interpret allegedly unambiguous terms in the parties' Compensation Plan. (Pet. ¶ 30.)  Under New York law, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms."  Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002). Extrinsic evidence of the parties' intent may not be considered unless the agreement's terms are reasonably susceptible to more than one meaning.  Id.

A petitioner seeking judicial review of an arbitrator's interpretation of a contract faces an especially heavy burden. The Court of Appeals for the Second Circuit has suggested that an arbitrator's contractual interpretation is beyond the scope of judicial review for manifest disregard of the law.  See, e.g., Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 214 (2d Cir. 2002) (Sotomayor, J.) ("The arbitrator's factual findings and contractual interpretation are not subject to judicial challenge, particularly on our limited review of whether the arbitrator manifestly disregarded the law."); Yusuf Ahmed Alghanim & Sons v. Toys 'R' Us, Inc., 126 F.3d 15, 25 (2d Cir. 1997) ("Interpretation of . . . contract terms is within the province of the arbitrator and will not be overruled simply

because we disagree with that interpretation."). A petition
alleging that the arbitrator failed to apply a clearly
applicable principle of contract interpretation similarly has
been found to exceed the scope of judicial review under the
manifest disregard standard. See, e.g., Sempra Energy v. Nat'l
Union Fire Ins. Co. of Pittsburgh, Pa., No. 06 Civ. 6107, 2006
WL 3147155, at *2 (S.D.N.Y. Oct. 31, 2006) ("'[M]isapplication
of rules of contract interpretation does not rise to the stature
of a manifest disregard of law.'" (alterations omitted)
(quoting I/S Stavborg v. Nat'l Metal Converters, Inc., 500 F.2d
424, 431 (2d Cir. 1974)) (internal quotation marks omitted).
Giller asks this Court to vacate the arbitration award because
of the arbitrator's alleged misapplication of the New York parol
evidence rule. Such claims do not constitute manifest disregard
of the law. See I/S Stavborg, 500 F.2d at 431-32; Sempra
Energy, 2006 WL 3147155 at * 2.

    In any event, Giller's claims have no merit. Giller
contends that the arbitrator misinterpreted the provision in his
Compensation Plan relating to "multiple transactions to a single
customer, grouped together for special discount approvals and
offerings." (Pet. ¶ 14.) He contends that the entire CUNY
project should have been covered by this provision and included
in the computation of his commissions for the 2007 fiscal year.
He argues that because the provision was unambiguous, it was

manifest disregard of the law to consider testimony about its meaning and application.  There was no error, much less a manifest disregard of the law.  The arbitrator could reasonably have concluded that the language was not unambiguous, and the arbitrator's ultimate conclusion that it did not apply to the CUNY project was amply supported.

Similarly, Giller complains that Oracle should not have included amounts for the CUNY project in his sales target for the 2008 fiscal year, because this was a misinterpretation of the sales targets described in his Compensation Plan.  The arbitrator did not explicitly consider extrinsic evidence in her interpretation of the sales target provision of the Compensation Plan.  Rather, she examined the meaning of the provision within the context of the entirety of the agreement.  In any event, it cannot be said that the arbitrator's interpretation of the Compensation Plan was unreasonable, much less that it was so unreasonable as to rise to the level of manifest disregard of the law.

### V.

Giller argues that it was manifest disregard of the law and a violation of section 10(a)(4) of the FAA for the arbitrator not to consider whether Oracle breached the implied covenant of

good faith and fair dealing by failing to pay him commissions
for the CUNY project beyond the $99,355 ordered by the
arbitrator.  (Pet. ¶ 30.)  The arbitrator specifically found
that Oracle was correct in not including the entire $135 million
as a basis for compensation in fiscal year 2007, and that Oracle
did not breach its contract with Giller by increasing his sales
target in the subsequent year, which had the effect of reducing
his commission rate.  (Award, at 12-18.)  Thus, the arbitrator
found that these actions were consistent with the Compensation
Plan.  Giller now contends that the arbitrator simply ignored
his separate claim for breach of the implied covenant of good
faith and fair dealing.  Giller had, in fact, pleaded his breach
of contract and breach of the implied covenant of good faith and
fair dealing as the same second claim for relief based on the
same facts.  There was, in any event, no error in the
arbitrator's rejection of the claim for breach of the implied
covenant of good faith and fair dealing, and certainly no
manifest disregard of the law, or a violation of section
10(a)(4).

The implied covenant of good faith and fair dealing, which
is read into every contract under New York law, is not distinct
from the contract itself.  See Page Mill Asset Mgmt. v. Credit
Suisse First Boston Corp., 98 Civ. 6907, 2000 WL 335557, at *8
(S.D.N.Y. Mar. 30, 2000); 511 W. 232nd Owners Corp. v. Jennifer

Realty Corp., 773 N.E.2d 496, 500-01 (N.Y. 2002).  "This
covenant embraces a pledge that neither party shall do anything
which will have the effect of destroying or injuring the right
of the other party to receive the fruits of the contract."
Jennifer Realty Corp., 773 N.E.2d at 500 (internal citation
omitted).  A claim for breach of the implied covenant can be
maintained simultaneously with a breach of contract claim "only
if the damages sought by the plaintiff for breach of the implied
covenant are not 'intrinsically tied to the damages allegedly
resulting from breach of contract.'"  Page Mill Asset Mgmt.,
2000 WL 335557, at *8 (quoting Canstar v. J.A. Jones Constr.
Co., 622 N.Y.S.2d 730, 731 (App. Div. 1995)); see also Excelsior
Fund, Inc. v. JP Morgan Chase Bank, N.A., 06 Civ. 5246, 2007 WL
950134, at *6-7 (S.D.N.Y. Mar. 28, 2007) (dismissing implied
covenant claim as duplicative of contract claim).

    Giller argues that Wakefield v. N. Telecom, Inc., 769 F.2d
109 (2d Cir. 1985), supports the proposition that breach of the
implied covenant and breach of contract are distinct causes of
action.  In Wakefield, the Court of Appeals found that an
employer's termination of an at-will employee "for the purpose
of avoiding the payment of commissions which are otherwise owed"
may breach the implied covenant despite the employee's status as
an at-will employee.  769 F.2d at 112.  Here, however, unlike
Wakefield, the arbitrator found that Giller was not terminated,

actually or constructively, but voluntarily resigned his
position at Oracle.  (Award, at 21-22.)  Furthermore, in
<u>Wakefield</u>, the employer terminated the salesman after the
salesman had completed a number of sales but before commissions
were paid.  769 F.2d at 111-12.  In ruling for the plaintiff,
the Court of Appeals noted that the commissions "were virtually
certain to become vested . . . ."  <u>Id.</u> at 114.  Here, by
contrast, the arbitrator found that Giller's sales had not yet
generated commissions because the client was not obligated by
contract to make any additional purchases and the subsequent
purchase orders were not yet booked.  (Award, at 12-13.)  Given
this uncertainty, the arbitrator found that Giller's
Compensation Plan did not entitle him to the alleged commissions
on future sales at issue.  These findings supported the
arbitrator's rejection of the breach of contract claim and also
disposed of the breach of implied covenant claim.  It cannot be
said that the arbitrator failed to decide Giller's implied
covenant claim and, as such, the facts alleged in the Petition
cannot establish that the arbitrator manifestly disregarded the
law or violated section 10(a)(4) of the FAA.

**VI.**

Giller raised a somewhat different contention at oral argument of the current motion.  He argued that the Supreme Court's decision in <u>Stolt-Nielsen</u> expanded the meaning of section 10(a)(4) to cover the alleged errors of the arbitrator in interpreting the Compensation Plan between the parties in this case.  The petitioner misreads <u>Stolt-Nielsen</u>.

Section 10(a)(4) is a narrow provision that applies, by its terms, only where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  The Supreme Court made it clear that,

> "It is not enough . . . to show that the panel committed an error -- or even a serious error.  It is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable."

<u>Stolt-Nielsen</u>, 130 S.Ct. at 1767 (internal citation, quotation marks, and alteration omitted).  In <u>Stolt-Nielsen</u>, the Supreme Court found that the arbitration panel imposed a class action provision in the arbitration agreement that the parties had not intended and on which they did not agree.  130 S.Ct. at 1776. In this case, the parties plainly intended to submit their dispute to the arbitrator to decide.  Moreover, the arbitrator

decided the contractual dispute that was properly committed to her based on her interpretation of the contract.  This was not a case of importing contractual provisions based on any personal views of industrial justice.

Accordingly, Oracle's motion to dismiss Giller's petition to vacate the denial of his breach of contract claim is **granted**.


### VII.


Giller also seeks to vacate the arbitration award pursuant to section 10(a)(2) of the FAA based on the alleged partiality of the arbitrator.  Giller argues that the arbitrator's failure to decide the dispute in his favor, in light of the arguments discussed above, supports a conclusion regarding the arbitrator's partiality.  (Pet. ¶ 30.)  Aside from the adverse ruling, which "alone rarely evidence[s] partiality," Scandinavian Reins. Co., Ltd. v. St. Paul Fire & Marine Ins. Co., No. 10 Civ. 0910, 2012 WL 335772, at *10 (2d Cir. February 3, 2012), the Petition contains no plausible factual allegations to support a claim of the arbitrator's partiality.  Oracle's motion to dismiss Giller's claim for vacatur under section 10(a)(2) is therefore **granted**.

## VIII.

At argument, Oracle agreed that the award of $99,355 in Giller's favor should be confirmed.  Because there is no basis to vacate the portions of the award in Oracle's favor, the entire award should be **affirmed**.

## CONCLUSION

The Court has considered all of the arguments of the parties.  To the extent not specifically addressed above, any remaining arguments are either moot or without merit.  For the reasons discussed above, Oracle's motion to dismiss certain portions of the petition is **granted**.  The arbitration award is confirmed in its entirety.  The Clerk is directed to enter Judgment and to close this case.  The Clerk is directed to close all pending motions.

**SO ORDERED.**

Dated:     New York, New York
           February 13, 2012

_____
John G. Koeltl
United States District Judge